UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **Civil No. 09-5528 (FLW)** |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| ROHM AND HAAS COMPANY, MORTON INT'L, INC., | : | |
| Defendants. | : | |

WOLFSON, United States District Judge:

Plaintiff United States of America ("the Government") brought the instant suit, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613, against Defendants Rohm and Haas Company ("Rohm and Haas") and Morton International, Inc. ("Morton") (collectively, "Defendants"), for the recovery of response costs the Government incurred in connection with the cleanup of Hopkins Farm Superfund Site ("the Site") in Plumstead Township, Ocean County, New Jersey. Defendants move to dismiss the Government's Complaint as time barred, and the Government moves for partial summary judgment to declare that its cause of action did not accrue until after the Third Circuit held that oversight costs were recoverable under CERCLA, in United States v. E.I. Dupont De NeMours & Co., Inc., 432 F.3d 161 (3d Cir. 2005), thereby overturning United States v. Rohn & Haas Co., 2 F.3d 1265 (3d Cir. 1993).

1

For the following reasons, the Court concludes that the Government's Complaint is untimely. Consequently, Defendants' motion is granted and the Government's motion is denied.

## I.     FACTS AND PROCEDURAL HISTORY

The following facts are viewed in the light most favorable to the Government since I must take the nonmoving party's version of facts as true on a motion to dismiss. Between 1950 and 1965, Morton, Rohm and Haas (Morton's successor-in-interest), or one of Morton's predecessors, disposed of methylene chloride, acetone, tricholorethene, and other wastes at the Site, a 57-acre parcel surrounded by residences and farms. See Compl., ¶ 6-7. Several of these wastes contaminated the soil and groundwater at the Site. Id. at ¶ 8. On September 1, 1984, following site investigations by the New Jersey Department of Environmental Protection ("NJDEP"), the United States Environmental Protection Agency ("EPA") listed the Site on the National Priorities List of abandoned hazardous waste sites. Id. at ¶ 9. NJDEP then conducted a Remedial Investigation and Feasibility Study, which it ultimately concluded in 1992.

Meanwhile, in August of 1991, Defendants entered into an Administrative Consent Order with NJDEP to remove the hazardous substances from the Site. Id. at ¶ 12. Defendant removed the substances from 1991 through 1995. In July 1996, EPA issued a "Baseline Risk Assessment" of the Site. In that assessment, EPA found that the Site no longer posed a risk to human health or the environment. The assessment, however, recommended further monitoring to verify those findings. Id. at ¶ 14.

Shortly after the assessment was issued, EPA issued a Record of Decision ("ROD") in September of 1996. In that ROD, EPA concluded, *inter alia*, that continued Site inspections as well as monitoring of the groundwater, surface water and soil was required. Id. at ¶ 15. "By letter dated April 9, 1997, EPA notified Defendants of their potential liability under CERCLA with respect to the Site." Id. at ¶ 16.

Following the notification of potential CERCLA liability, on September 24, 1997, Defendant Morton entered into a consent order with EPA ("1997 Consent Order"). Id. at ¶ 17. In the 1997 Consent Order, Morton agreed to conduct the continued Site inspections and monitoring mandated by the ROD. Morton, further, agreed to pay a portion of the response costs EPA incurred in connection with the Site. Id. Importantly, the 1997 Consent Order explicitly excluded any reimbursement for oversight costs. Def. Open. Br., Exh. 2 ("1997 Consent Order") at 22. Oversight costs were defined by the 1997 Consent Order as "future response costs incurred by EPA in monitoring and supervising [Morton's] performance to determine whether such performance is consistent with the requirements of this Consent Order ...." Id. The 1997 Consent Order also included a reservation of rights, wherein the EPA "reserve[d] its right to bring an action against the Respondent under Section 107 of CERCLA for the recovery of all response costs incurred by EPA at the Site [including] any future costs incurred ...." Id. at 24. No tolling agreement was included in the 1997 Consent Order.

A few years later, on December 10, 2001, EPA notified Morton that there were no longer any potential risks to human health and the environment, and that monitoring was

complete. Id. at 18. The site was delisted from the National Priorities List of abandoned hazardous waste sites on August 27, 2002. Id. at 19. Another six years later, on November 20, 2008, EPA sent Defendant Rohm and Haas a letter demanding payment for the remaining past response costs. Id. at 20.

Before the complaint was filed, EPA and Rohm and Haas entered into a tolling agreement for the period of November 18, 2008 through March 22, 2009. Def. Open. Br., Exh. 2 ("Tolling Agreement").[1] That agreement was later extended to July 31, 2009. The Government filed its complaint on October 29, 2009, seeking recovery of response costs under 42 U.S.C. § 9607(a), and a declaratory judgment for future response costs that the EPA may incur in connection with the Site under 42 U.S.C. § 9613(g)(2). While the complaint does not specify which response costs the Government seeks, for the purposes of this motion, the Government states that the Court "need only consider the recoverability of oversight costs." Govt. Reply at 1 n.1.[2]

After the complaint was filed, Defendant filed the instant motion to dismiss on statute of limitation grounds, and the Government filed a cross-motion for partial summary judgment. In addition, the Government has filed a motion to strike Defendants' surreply brief. For the following reasons, Defendants' motion to dismiss is granted and the

---

[1] Defendant Morton was not a party to this agreement.

[2] The Government goes on to state that it "does not concede that the only costs in this case are oversight costs." Id. For reasons explained in more detail *infra*, the Court finds this perplexing given that the Government's rationale for not filing its complaint sooner is tied to an inability to seek oversight costs under the case law in effect during the limitations period.

Government's motion for partial summary judgment is denied. Because the Court does not reach the issue addressed in Defendants' surreply, Plaintiff's motion to strike that brief is denied as moot.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Standard

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. In ruling on a motion to dismiss, courts must generally focus on the complaint, however, where a document attached to the parties' briefing is "integral to or explicitly relied upon in the complaint, " courts may consider that document. See In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

5

Here, in connection with its motion to dismiss, Defendants attached a copy of the 1997 Consent Order between Morton and the EPA. The Court may properly consider this document on a motion to dismiss because it is referenced in the Complaint. See id. Defendants also attached a copy of the Tolling Agreement. This document may be considered because it is integral to the viability of the Government's claims. Id.

### B. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Here, the two motions address the same legal arguments. Both the motion to

dismiss and the motion for partial summary judgment ask the Court to determine whether the Government's claims were timely brought. There are no pertinent factual disputes relating to either motion; the parties' dispute centers on the application of those facts to the governing law. Thus, I find it appropriate to address the legal issues simultaneously in my analysis.

### III.   DISCUSSION

Defendants argue that the Government's Complaint is time barred. The complaint asserts claims under 42 U.S.C. § 9607(a), for recovery of the oversight response costs, and under 42 U.S.C. § 9613(g)(2) for a declaratory judgment that Defendants are liable for any future response costs EPA may incur in connection with the Site. The parties agree that there are two potential limitation periods that could apply to the Government's claims—one for three years and one for six. Indeed, section 9613(g)(2) provides for two different limitations period depending upon on the nature of the action:

> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced--
>
> (A) for a *removal action*, within 3 years after completion of the removal action . . . ; and
>
> (B) for a *remedial action*, within 6 years after initiation of physical on-site construction of the remedial action, ....

42 U.S.C. § 9613(g)(2) (emphasis added).

The parties, further, agree that the Court need not determine whether the Government claims are classified as "removal" or "remedial" actions because, whether the three-year or six-year limitations period applies, the Government's Complaint is untimely

unless the Court determines that the limitations periods are tolled by virtue of the Third Circuit's preclusion of oversight response cost claims preceding its decision in DuPont. The Court agrees with the parties on this point.

With respect to the three-year limitation period for section 9613(g)(2) (A) for removal actions, those actions must be brought "within 3 years after completion of the removal action."[3] See Agere Systems, Inc. v. Adv. Environ. Tech. Corp., 602 F.3d 204, 220 (3d Cir. 2010). This limitation period begins to accrue upon issuance of an ROD. See U.S. v. Davis, 882 F.Supp. 1217, 1226 (D.R.I. 1995). The Government did not file its complaint within three years of the ROD's issuance in September of 1996, thus, unless there is a basis for tolling the limitations period, its claim is time barred under section 9613(g)(2)(A). And, with respect to section 9613(g)(2)(B), the Government did not file its complaint "within 6 years after initiation of physical on-site construction of [any] remedial action."[4] According

---

[3] CERCLA defines a "remedial action" as consisting of:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment . . . [such as] cleanup of released hazardous substances and associated contaminated . . . and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

42 U.S.C. § 9601(24).

[4] CERCLA defines "removal" as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the

8

to the complaint, Morton began removing hazardous substances from the Site in 1991. Therefore, without the benefit of tolling, the six-year limitations period would have expired in 1997. As noted, the Government and Rohm and Haas entered into a tolling agreement covering the time period of November 18, 2008 through July 31, 2009. That eight-month period, however, is alone insufficient to bring the Government's filing within the window of either limitations period for its claims against Rohm and Haas. Hence, the Government's claims rise or fall upon its accrual and equitable tolling arguments.

### A. Accrual

The Government's primary argument, both in opposition to Plaintiff's motion to dismiss and in support of its motion for partial summary judgment, is that it was barred from from bringing its response claim, for oversight costs, by the Third Circuit's 1993 decision in <u>Rohm & Haas</u>. Only when that decision was overturned by <u>DuPont</u> on December 22, 2005, the Government argues, could it have brought its claims. Thus, for purposes of calculating the limitations period, the Government contends that its claim did not "accrue or could not be brought by the United States" until December 22, 2005.

Section 9613(g)(2) explicitly states what actions mark the beginning of the accrual

---

> environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, [*inter alia*]. The term includes . . . security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for ....

42 U.S.C. § 9601(23).

period for either a removal or remedial action:

> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced--
>
> (A) for a removal action, within 3 years *after completion of the removal action* . . . ; and
>
> (B) for a remedial action, within 6 years *after initiation of physical on-site construction of the remedial action*, ....

42 U.S.C. § 9613(g)(2) (emphasis added). Removal claims begin to accrue "after completion of the removal action" and remedial claims begin to accrue "after initiation of physical on-site construction of the remedial action ...." In view of this clear statutory language, the Government's argument for a non-statutory based accrual date fails.

Moreover, the Government's citation to Neely v. United States, 546 F.2d 1059, 1068 (3d Cir. 1976) superceded by statute on other grounds as stated in U.S. v. Fiorelli, 337 F.3d 282, 285 (3d Cir. 2003), is unavailing. The Government cites to that case to support its contention that DuPont is an appropriate accrual date. Neely involved a civil claim brought by a criminal defendant for reimbursement of fines he paid based on a gambling violation. After he paid his fine, and after the six-year limitations period for bringing a claim against the United States had expired, the Supreme Court held that there was a complete defense to the sort of gambling violations on which the Plaintiff Neely was convicted. The Neely Court neatly summarizes the issue presented in that case:

> In United States v. Sams, [citation omitted], it was not necessary for us to decide whether the six year limitations period applicable to actions against the United States, 28 U.S.C. s 2401(a), commenced running when the fine was imposed or when [the Supreme Court decisions in] Marchetti and Grosso

> were decided. Because Neely's fines were imposed in 1962 and 1966, and his claim for relief was not filed until December 12, 1973 eleven years after his first fine and seven years after his second this appeal requires us to decide the question reserved in <u>Sams</u>.

<u>Id.</u> at 1068. The court pointed out that "federal courts have sometimes postponed the running of the limitations period in actions against the United States where the claimant did not know, and in the exercise of reasonable diligence could not learn, that a claim had accrued." <u>Id.</u> Based on this axiom, the court concluded that Neely's rights accruing under the Supreme Court cases were "inherently unknowable" prior to the date upon which those cases were decided. <u>Id.</u>

<u>Neely</u> is distinguishable from the instant case for several reasons. For one, the statute of limitations at issue in <u>Neely</u> did not include an accrual event. That statute, 28 U.S.C. § 2401(a), provided:

> Every civil action commenced against the United States shall be barred unless the complaint is filed within six years *after the right of action first accrues.*

<u>Id.</u> at n.10 (emphasis added). As noted above, and in contrast to the statute in <u>Neely</u>, CERCLA provides specific accrual events for both removal and remedial claims, *i.e.*, "after completion of the removal action" and "after initiation of physical on-site construction of the remedial action ....," respectively. In addition, the <u>Neely</u> court explicitly states that it relies upon an axiom specific to claims brought against the United States. The Government

11

has pointed to no case law applying that axiom to cases brought *by* the United States.[5] Neely is further distinguishable in that the Supreme Court made the new defense retroactively applicable to those, like the plaintiff in that case, that had been convicted of a gambling violation.  See U.S. v. U.S. Coin and Currency, 401 U.S. 715, 723-24  (1971).  Here, the Government does not contend that DuPont applies retroactively.

Furthermore, the Court finds the Government's contention that it "does not concede that the only costs in this case are oversight costs," Govt. Reply at 1 n.1, is inconsistent with its accrual argument.  The Government's accrual argument is based on the notion that it could not have known that it could recover oversight costs in light of the Third Circuit precedent in effect from 1993 through 2005.  By its very nature, that argument is limited to only oversight response costs. So, for the Government to state that it does not concede that its claim is limited to such costs undermines its own argument.

This fallacy in the Government's argument also highlights another distinction between its circumstances and those in Neely.  The plaintiff in Neely had no cause of action at all before the Supreme Court cases establishing a defense previously unavailable to him were decided.  Here, by contrast, the Government always had a cause of action for response costs generally.  It was only a certain type of costs—oversight costs—that were precluded by the Third Circuit prior to DuPont.  In that connection, the Government could

---

[5] The Government, further, argues that the time limitation in CERCLA is not jurisdictional and, therefore, is not absolute.  See Govt. Opp. at 10.  That argument  goes to whether the limitations period may be tolled, which is the subject of the next section of my analysis.

have brought an action (consistent with its reservation of rights under the consent order) against Morton and Rohm and Haas to seek response costs even if the oversight costs would not have been allowed. The Government presumably has some non-oversight response costs, or else it would not have clarified in its reply brief that it was not conceding that its claims were only for oversight costs.

Finally, as Defendants correctly point out, courts have held that "[t]he application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law." Versluis v. Town of Haskell, 154 F.2d 935, 943 (10th Cir. 1946) cited in Comm. Vending Corp. of Arizona, Inc. v. F.C.C., 365 F.3d 1064, 1075 (D.C. Cir. 2004). Accordingly, I conclude that the Government may not rely upon the date DuPont was issued as the date its causes of action accrued. That being the case, its claims are time barred unless the Court concludes that it is entitled to equitable tolling.

### B.   Equitable Tolling under CERCLA

The parties disagree as to whether equitable tolling is permitted by CERCLA. At least one court that has addressed this issue concluded that CERCLA is jurisdictional and, therefore, permits equitable tolling. See U.S. v. Halliburton Energy Services, Inc., Civil Action No. H-07-3795, 2009 WL 3260540 (S.D.Tex. Oct. 6, 2009). The Third Circuit left open this question in New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997), a case discussing whether a plaintiff was entitled to equitable tolling on its CERCLA contribution claims. In ruling that the plaintiff was not entitled to equitable tolling, the

court focused on the merits of that doctrine and did not decide whether the statutory limitation for CERCLA contribution claims (42 U.S.C. § 9613(g)(3)) is jurisdictional. New Castle, 111 F.3d at 1126 n.12. Likewise, here, the Court finds it appropriate to focus on the merits of the Government's equitable tolling defense and, assumes for the sake of argument, that the CERCLA limitation periods at issue here are jurisdictional, without directly deciding the issue.

Turning to the merits, the Government argues that the existence of Third Circuit case law foreclosing that portion of its claim seeking oversight costs constitutes an extraordinary circumstance that prevented it from timely filing its suit.[6] The Government points to Seattle Audubon Soc'y v. Robertson, 931 F.2d 590 (9th Cir. 1991), rev'd on other grounds, 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) in support of its argument. In that case, "the Ninth Circuit ruled that it was appropriate to toll the fifteen-day statute of limitations applicable to a claim that would have been futile under a statute that was subsequently held unconstitutional." Boling v. U.S., 220 F.3d 1365, 1374 (Fed. Cir. 2000).

But the facts of Seattle Audubon are distinguishable from the facts here. Even though the plaintiff in that case was faced with a statute that had been interpreted to bar his claim, he took several actions to pursue its claim, including challenging the district

---

[6] A plaintiff may demonstrate that he is entitled to equitable tolling "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Santos ex rel. Beato v. U.S., 559 F.3d 189, 197 (3d Cir. 2009) (quoting Hedges v. U.S., 404 F.3d 744, 751 (3d Cir. 2005)).

14

court's application of an unconstitutional statute to it, seeking reconsideration of that decision, and appealing that decision to the Ninth Circuit. See 931 F.2d at 596. In addition, courts have limited Seattle Audubon's to its facts, "in particular the unusually short limitations period, and the diligence of the plaintiff in pursuing its case." Id.; .Scott v. Escalante, No. C04-5819RBL, 2005 WL 2207061, *2 (W.D.Wash. Sept. 12, 2005) (distinguishing, and declining to apply, Seattle Audubon where plaintiff's minority status and his parent's mental disability prevented him from timely filing suit). That the Government here did little to pursue its claim against Defendants, and that its claims involve either a three or six-year limitations period clearly distinguishes Seattle Audubon from the facts here. Accordingly, I reject the Government's argument that the existence of adverse precedent alone may toll a statute of limitations.[7]

More importantly, "a plaintiff will not receive the benefit of equitable tolling unless [it] exercised due diligence in pursuing and preserving [its] claim." Santos ex rel. Beato v. U.S., 559 F.3d 189, 197 (3d Cir. 2009). The Government has not pointed to any facts suggesting that it exercised due diligence in preserving its claim other than the general

---

[7] The Government also argues that Urcinoli v. Cathel, 546 F.3d 269 (3d Cir. 2008), stands for the proposition that a court's action may constitute an extraordinary circumstance that justifies equitable tolling. But, like Seatte Audubon, Urcinoli is clearly distinguishable. In that case, the district court dismissed a habeas petitioner's petition without notice to the petitioner, thereby depriving the petitioner of his opportunity to re-present his claims. The Third Circuit concluded that equitable tolling was appropriate because "[t]he District Court's *sua sponte* dismissal . . . was an extraordinary circumstance that left [the petitioner] without a viable channel for having any of his claims addressed on the merits." Id. at 276 (emphasis in original). No similar argument can be made here, where the Government did not even attempt to file a claim within the limitations period and no court order or judgment precluded it from filing its claim.

reservation of rights it included in the 1997 Consent Order, which reservation did not specifically reference oversight costs, and that it sought rehearing *en banc* of the Third Circuit's decision in Rohm & Haas in 1993.  It goes without saying that seeking rehearing *en banc* in that case does not speak to the Government's claim against the Defendants here.

Indeed, the Government's decision to forego several opportunities to preserve its claim against Defendants is readily apparent from the facts.  As an initial matter, the Government did not sue Defendants during the limitations period and then appeal to the Third Circuit to request that the Court of Appeals revisit its holding in Rohm & Haas. While the Government contends that filing such a suit would have been futile, that the Government appealed the 2004 district court decision in DuPont to the Third Circuit, demonstrates that it believed the oversight ban in Rohm & Haas could be revisited. Moreover, the Government acknowledges in its briefing that, a few years after Rohm & Haas was decided, several other circuit courts held that oversight costs were recoverable under CERCLA. See e.g., United States v. Lowe, 118 F.3d 399 (5th Cir. 1997); Atl. Richfield Co. v. Am. Airlines, Inc., 98 F.3d 564, 568-69 (10th Cir. 1996).

The Government, further, passed up the opportunity to include oversight costs in its reservation of rights in the 1997 Consent Order.  Noticeably, in 1999, the Government included such language in a consent order in another matter that ultimately came before a court in this circuit.  The court in Action Mfg. Co., Inc. v. Simon Wrecking Co., 428 F.Supp.2d 288 (E.D.Pa. 2006) explains that the EPA entered into a consent decree requiring the defendant to reimburse the EPA for oversight costs "if the decision in United States v.

16

Rohm & Haas Co., [2 F.3d 1265 (3d Cir. 1993) ] regarding the liability of responsible parties under Section 107(a)(4)(A) of CERCLA for EPA oversight costs is reversed or overturned by the Court of Appeals for the Third Circuit, the United States Supreme Court, or the United States Congress." Id. at 324.  The Government argues that Action Mfg. does not stand for the proposition that "the United States should have to convince a defendant to enter [sic] a settlement document with provisions for resolving claims under future, unknowable law."  Govt Opp. at 18.  My citation to Action Mfg. here, however, is to demonstrate that the Government was *well* aware of the option to include such language in its consent order with Morton.

In that same connection, the Government could have included (or sought to include) a tolling agreement in the 1997 Consent Order.  There are no facts in the complaint indicating that such an agreement was sought, however, and the Government has not pointed to any facts that it could assert in that regard.

Most strikingly, the Government chose not to bring its claim immediately after DuPont was decided.  Instead, it waited three years *after* DuPont was decided to seek a tolling agreement with the Defendants.  Such behavior does not bespeak of due diligence in preserving one's claim.  To the contrary, this sort of behavior constitutes excusable neglect, at best.  Accord New Castle, 111 F.3d at 1126 (holding that plaintiff's waiting two years and six months to file its suit after discovering its CERCLA contribution claim "[a]t best . . . may constitute excusable neglect.").

Finally, the Court is not persuaded by the Government's argument that it pursued

17

its claim here by "vigorously pursu[ing]" oversight cost claims in other circuits. Govt. Reply at 14. Rather than demonstrating due diligence, that fact buttresses my conclusion that the Government failed to pursue its claim against the defendants here by not filing suit immediately after DuPont was decided. Accordingly, I conclude that the Government has not alleged facts suggesting that it is entitled to equitable tolling, and its claims were untimely filed.

### C.    Motion to Strike Surreply Brief

Finally, the Court briefly addresses the Government's motion to strike Defendants' surreply brief. In that brief, Defendants sought to submit additional briefing on whether CERCLA is jurisdictional. As demonstrated by my above analysis, I did not reach that legal question. Thus, the Government's motion is denied as moot.

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the Government's Complaint was not timely filed. As a result, Defendants' motion to dismiss is granted and Plaintiff's partial motion for summary judgment is dismissed. Plaintiff's Complaint is, therefore, dismissed with prejudice. In addition, Plaintiff's motion to strike is denied as moot. An appropriate Order will follow.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Dated:   September 21, 2010